## Sanitary District of Chicago v. A. S. Alderman.

### Gen. No. 4,268.

1. MEASURE OF DAMAGES—*what evidence competent in proof of, in action for injury to hay, etc., arising from the construction, etc., of an embankment.* Evidence in such a case is competent which tends to show that during a certain period the plaintiff had practically no use or benefit of his land and that for another period, while he cut a crop therefrom, such crop was injured to a specified amount.

2. ATTORNEY'S FEES—*when, may be recovered of drainage district.* Attorney's fees may be recovered of a drainage district in an action

against it for damages for overflowing land, where a notice is given pursuant to statute which sufficiently described the land claimed to have been damaged to enable the defendant to examine it: and it is not necessary to count in the declaration upon the giving of such notice.

3.  NOTICE—*when objection to, is waived.*  An objection to a notice upon a specific ground operates as a waiver of any objection thereto upon the ground that it is not competent under the existing state of the pleadings.

4.  INJURY TO REAL PROPERTY—*right to recover damage for.*  Where a right of way is conveyed by deed or condemned under the statute the consideration paid is considered to include damages to land of the same owner not conveyed or condemned, which may result from the construction and legitimate operation of the work of the condemning body; but where there is negligent construction or operation, damages may be recovered.

Action on the case to recover for injury to real property.  Error to the Circuit Court of Will County; the Hon. DORRANCE DIBELL, Judge, presiding.  Heard in this court at the October term, 1903.  Affirmed. Opinion filed March 14, 1904.

JAMES TODD, P. C. HALEY and WILLIAM A. BOWLES, for plaintiff in error.

DONAHOE & McNAUGHTON, for defendant in error.

MR. JUSTICE FARMER delivered the opinion of the court.

Defendant in error sued plaintiff in error in the Circuit Court of Will county in an action on the case to recover damages for injury to grass. hay and pasture on land described in the declaration, alleged to have been sustained on account of the construction and maintenance of an embankment, which it is claimed obstructed the natural flow of water, and caused it to flow and stand upon plaintiff's land.  The land thus claimed to have been overflowed is in the southwest quarter of section twenty-six (26), township thirty-seven (37) north of range ten (10) east of the third principal meridian, in Will county.  The Des Plaines river ran through this tract of land from the northeast in a southwest direction.  Goose lake is a shallow body of water, covering a part of said southwest quarter of section twenty-six and a portion of section thirty-five.  It also lies in a northeast and southwest direction, and the river passes

through it a little west of the middle. Des Plaines river is a shallow winding stream, having low banks, and in times of heavy rains quickly overflows and covers the entire valley.

Defendant constructed its drainage canal or channel a short distance to the southeast of the Des Plaines river, following the general direction of the river. In order that the work of constructing the drainage channel might not be interfered with by the overflow from the river, defendant changed and straightened its channel from the head of Goose lake northeast to Riverside, a distance of about nineteen miles, where it connected with the original channel of the river. From the point where this new channel or "river diversion" connected with the old channel at the head of Goose lake, defendant cleaned out and straightened the channel southwest and constructed an embankment along and near the bank and between the river and the line of the drainage canal, to prevent the water from the river flowing in and upon the canal while the work of its construction was in progress. As the chief engineer of defendant testified, "All this was done to enable us to prosecute the work of the new channel in the dry." This embankment extended through Goose lake and through sections twenty-six, thirty-five and thirty-four to the Romeo road, on the township line, and was about six or seven feet high, and wide enough at the top to drive a team on.

The proof fairly shows that prior to the construction of the embankment, the overflow from the river would spread to the southeast and much of the water pass off that way, and that the embankment prevented this and caused the water to flow to the northwest on plaintiff's land in increased quantities, and remain there for a longer period of time. In our opinion the proof warranted the finding that plaintiff had sustained damages to the use and occupation of his land, resulting from the construction and maintenance of the embankment. The lands injured, comprising between seventy and eighty acres, were used by plaintiff for hay and pasture. The proof was that during the years 1897, 1898, 1899 and 1900 the land was overflowed

so often, and the water stood on it so much of the time, that plaintiff had but little use of it. His cattle at times had access to it, but the water so injured the grass that it was not fit for pasturage and they would eat very little of it. Plaintiff testified, and it was not contradicted, that the fair cash value of the flooded land for each of these years was three dollars per acre. The year 1901 was an unusually dry one, and plaintiff cut quite a good deal of hay, but of poor quality, from the land. He testified that the injury for that year was one dollar per acre. This testimony was objected to by defendant as not being the proper measure of damages, and it is now insisted the court erred in admitting it. The testimony showed that for the first four years above mentioned, the plaintiff practically had no use or benefit of the land, and the last year, while he cut a crop of hay from it, it was injured to the extent of one dollar per acre. That the court adopted the correct measure of damages, we think, is settled by Chicago v. Huenerbein, 85 Ill. 594, and Kankakee and Seneca R. R. Co. v. Horan, 17 App. 650. Even if defendant's theory as to the proper measure of damages had been adopted, the verdict so far as the amount is concerned could hardly have been more favorable to it, for the verdict was for but five hundred dollars, while the proof tended to establish damages to the extent of twice that amount.

Objection is made to the ruling of the court in permitting plaintiff to prove up an attorney's fee and taxing the same as costs against the defendant. Two reasons are assigned why it is claimed this was error : first, that the notice given defendant by plaintiff in pursuance of the act creating the Sanitary District, that he claimed damages to his land and of his intention to sue to recover them if the matter was not settled, was insufficient in that it did not properly describe the land; second, that the notice was not pleaded in the declaration nor any claim for attorney's fees made therein. The notice described the land as "The real estate owned and possessed by him (plaintiff) in section twenty-six (26), township thirty-seven (37) north, range

ten (10) east of the third principal meridian, in the county
of Will, and State of Illinois, overflowed and otherwise
damaged to the amount of five thousand dollars ($5,000)
by reason of the construction, enlargement and use of the
drainage channel, ditches, drains, outlets, and other im-
provements made by the said Sanitary District of Chicago."

The declaration counted on damages to the southwest
quarter of section twenty-six and proof showed damages
to about seventy or eighty acres of plaintiff's land in said
southwest quarter of the section mentioned, lying north-
west of the obstruction complained of. It is argued the
notice should have described the land actually injured, and
no more, so that defendant " could examine into the same,
and, if possible, adjust the matter." We do not think that
objection well taken. The land was sufficiently described
to enable the defendant to examine into and adjust the
matter if it had desired to do so. It is not claimed that it
even made any inquiry or effort to ascertain what, if any,
of plaintiff's lands were damaged, or that it had any desire
or disposition to settle or adjust the matter. The failure
to describe the exact amount and boundaries of the lands
damaged, in the notice and declaration, gave the plaintiff
no advantage, and prejudiced none of defendant's rights.
As to the second objection, the act under which defendant
was organized makes it liable to the plaintiff for reasonable
attorney's fees, to be taxed as costs, in all cases where a
recovery is had against it for damages for overflowing
lands, provided the notice required by statute of plaintiff's
claim is served before suit brought. As the attorney's fees
are to be taxed as costs in case of recovery, we can see no
reason why giving the notice should be averred and attor-
ney's fees counted on in the declaration. Besides, proof of
the notice was not objected to on the trial, on account of
the state of the pleadings, but on the ground that it was
incompetent " and particularly for the reason that it does
not describe the property involved in this suit."

The case of P. D. & E. Ry. Co. v. Duggan, 109 Ill. 537,
was a suit instituted before a justice of the peace, for the

value of stock killed by defendant's cars.  It was claimed the stock came on the railroad track by reason of defendant's failure to make and keep its fences in repair.  On the trial in the Circuit Court, attorney's fees were claimed by plaintiff and allowed.  It was claimed this was erroneous because no claim for attorney's fees was in the bill of particulars, and no notice was given defendant that any would be asked.  The Supreme Court say:  "In respect of this we think the statute itself is sufficient notice to the defendant that the claim will be made and the defendant should be prepared to make any resistance to it."

Defendant purchased of plaintiff the land over which its right of way extended through his premises, and it is insisted that defendant's plans and specifications for the proposed work had been previously prepared and as it was a public work authorized by act of the legislature, plaintiff was bound to know for what purpose his land was to be used and the nature of the improvement to be constructed thereon; that the embankment complained of was constructed under authority of law in accordance with the plans and specifications and is permanent in character, and that the price paid for the land purchased, included the right to build and maintain the improvement complained of. It is claimed that the case of Sanitary District v. Ray, 85 Ill. App. 115, and 199 Ill. 63, in which these questions were determined adversely to defendant, cannot be considered as conclusive, for the reason that in the Ray case the plans and specifications for the work were not offered in evidence, and were not before the court as they are in this case. Undoubtedly the rule is the same where a right of way is conveyed by deed, as where it is condemned under the Eminent Domain Act, and the consideration paid is presumed to include damages to land not conveyed, which may result from the construction of the legitimate work of the corporation, "in a reasonably proper and skillful manner, so as to avoid the infliction of all loss and injury not necessarily resulting from the building and operating the road." O. & M. Ry. Co. v. Wachter, 123 Ill. 440; North Shore St.

Ry. Co. v. Bayne, 192 Ill. 239; and C. B. & Q. R. R. Co. v. Schaffer, 123 Ill. 112.    The rule is well stated in Aiken v. Boardman, 2 Metc. 464, quoted with approval in C. R. I. & P. Ry. Co. v. Smith, 111 Ill. 363, in the following language: "A grant being made for a valuable consideration, it shall be presumed that the grantor intended to convey, and the grantee expected to receive, the full benefit of it; and therefore that the grantor not only conveyed the thing specifically described, but all other things, so far as it was in his power to pass them, which were necessary to the enjoyment of the thing granted."

The construction of the embankment as shown by the evidence, was for convenience in excavating the main channel.    It was built to keep the water from the Des Plaines river and valley from flowing into the drainage canal while the work was in progress.    As defendant's chief engineer testified, "to enable us to prosecute the work of the new channel in the dry."    Whatever may be said of the convenience or necessity for the embankment while the work of constructing the drainage canal was in progress, after the completion of that work, it would seem the necessity for it ceased, and that its maintenance is such negligence as to make the defendant liable for the damages resulting therefrom.    There is evidence also tending to show that defendant has not treated the maintenance of the embankment as necessary, for it has allowed the water to cut and wash channels through it, at different places.

What we have said renders unnecessary any discussion of the court's rulings in refusing defendant's instructions complained of.    They were not in harmony with the views herein expressed, and if we are correct, were properly refused.

Finding no error, the judgment is affirmed.

*Affirmed.*

Mr. Presiding Justice Dibell having presided at the hearing of this cause in the trial court, did not participate in the foregoing decision.