### George Bernhardt, Appellee, v. Baltimore & Ohio Southwestern Railroad Company, Appellant.

1. STATUTE OF LIMITATIONS—*when begins to run for injury to real property.* Where a permanent structure legally authorized, such as a railroad embankment, is built and there is no improper or negligent construction, all damages past, present and future are sustained when the structure is erected and its operation begun, and the Statute of Limitations begins to run on the completion of the structure. Where, however, "a structure is built by legislative authority and damages result from negligent or improper construction, the party injured is not bound to assume the imperfect structure will be permanent, and he may bring successive actions for resulting damages. The remedy for negligent or improper construction is to hold the party responsible for all damages resulting therefrom until the cause of damage is removed by a proper construction." In case of such negligent or improper construction the injured party may at his election either treat the structure as permanent and sue for all damages, past, present and future, or he may treat it as temporary and transient, assuming it will be removed, and sue and recover for each recurring injury resulting from such negligent construction.

2. WATERCOURSES—*duty of railroad company intersecting.* Railroad companies in intersecting watercourses are required to restore them to such state as not to impair their usefulness unnecessarily.

3. MEASURE OF DAMAGES—*for overflowing lands.* The true measure of damages where lands are wrongfully overflowed so as to deprive the owner of their use, is the fair cash rental value.

Action in case. Appeal from the Circuit Court of St. Clair county; the Hon. GEORGE A. CROW, Judge, presiding. Heard in this court at the March term, 1911. Affirmed. Opinion filed November 11, 1911.

KRAMER, KRAMER & CAMPBELL, for appellant; EDWARD BARTON, of counsel.

Bernhardt v. B. & O. Southwestern R. R. Co., 165 Ill. App. 408.

C. E. CHAMBERLIN and BARTHEL & KLINGEL, for appellee.

MR. PRESIDING JUSTICE SHIRLEY delivered the opinion of the court.

This was an action by appellee to recover damages for the alleged wrongful erection of its railroad embankment with insufficient openings for the passage of surface waters whereby appellee's lands were rendered less fit for the cultivation of crops for a period of five years prior to the filing of the suit. A jury returned a verdict for appellee for the sum of $780 upon which there was a judgment.

Appellant interposed a plea of the general issue and in addition thereto a plea of limitations that the cause of action did not accrue within five years.

It appeared from the evidence that appellee was the owner of a tract of land located in Silver Creek bottom about ninety acres of which were in cultivation. He had owned the land since 1891. Silver Creek is a stream flowing in a southerly direction and appellee's land is located about a mile north of the embankment of appellant which is the subject of complaint here, and on the west side of the bottom near the bluffs. The bottom along there west of the creek is about a quarter of a mile in width. The testimony further shows that the banks of the creek are higher than appellee's land through which there is a kind of slough or low ground where the water in a state of nature flowed south, and flowed into Silver Creek still south of the embankment prior to its construction. In the year 1901 appellant built a solid embankment for its railway entirely across the bottom, a distance of nine hundred feet west of the creek and across the bottom on the east side a distance of five hundred feet. The embankment was twenty-five feet high. No openings were made except at the creek where there is a bridge making an opening of four hundred feet. Between the embankment and the land of appellee there is a high-

410     APPELLATE COURTS OF ILLINOIS.

Bernhardt v. B. & O. Southwestern R. R. Co., 165 Ill. App. 408.

way and an electric railway across the bottom; each has openings on the west side. of the bottom, the former an opening one hundred and seventy-eight feet and the latter one of about one hundred and forty feet through which the water on the west side was accustomed to flow.

There was evidence of several witnesses that since the erection of the embankment of appellant the surface waters which had formerly flowed through the openings of the highway and electric road on to the creek beyond the embankment, were dammed and kept back by it upon the lands of appellee and others along the west side of the bottom and were caused to stand upon the lands two or three days longer than they stood before, and to the extent that no crops could be raised in the five years prior to the bringing of the suit except the year 1906 when a crop was raised. The testimony of appellant's witnesses was to the effect that the embankment would not so affect the land at its distant location but as the evidence was conflicting there was no error in refusing to direct a verdict for appellant upon this question.

It is contended the motion to direct a verdict should have been given for the reason the undisputed evidence showed the Statute of Limitation began to run upon the completion of the embankment in 1901 more than five years prior to the bringing of the suit.

Where a permanent structure legally authorized, such as a railroad embankment, is built and there is no improper or negligent construction, all damages past, present and future are sustained when the structure is erected and its operation begun, and the Statute of Limitations would begin to run on the completion of the structure. C. & E. I. R. R. v. Loeb, 118 Ill. 203; North Shore St. Ry. Co. v. Payne, 192 *id*. 239.

Where, however, "a structure is built by legislative authority and damages result from negligent or im-

proper construction, the party injured is not bound to assume the imperfect structure will be permanent and he may bring successive actions for resulting damages. The remedy for negligent or improper construction is to hold the party responsible for all damages resulting therefrom until the cause of damage is removed by a proper construction.'' North Shore St. Ry. Co. v. Payne, *supra;* O. & M. Ry. Co. v. Wachter, 123 *id.* 440; C. B. & Q. R. R. Co. v. Schaffer, 124 *id.* 112.

In case of such negligent or improper construction the injured party may at his election either treat the structure as permanent and sue for all damages, past, present and future, or he may treat it as temporary and transient, assuming it will be removed, and sue and recover for each recurring injury resulting from such negligent construction. Strange v. C. C. C. & St. L. Ry. Co., 151 Ill. App. 478; Same, 245 Ill. 246.

Appellee's declaration in substance averred a negligent construction in the erection of the embankment without sufficient openings to permit the free passage of water whereby the flow of the waters coming naturally on appellee's land from the overflow of Silver Creek and which ought to and naturally would run off the land over and along the place occupied by the embankment had been diverted from its natural course and had been caused to flow in larger quantities upon the land and to remain thereon for a longer period of time than it naturally would, and causing the land to become wet and swampy and to a large extent unfit for cultivation during the five years prior to the bringing of the suit.

Railroad companies in intersecting watercourses are required to restore them to such state as not to impair their usefulness unnecessarily. This duty arises at common law and it is also imposed by statute. O. & M. Rwy. v. Thillman, 143 Ill. 127.

We are of opinion the evidence heretofore adverted to was sufficient to support the verdict that the embankment was improperly and negligently constructed

without sufficient openings, resulting in the damages complained of; and was also sufficient upon appellant's plea of limitations to authorize a recovery; appellee electing to treat the structure as temporary, and to sue for recurring injuries, and that there was no error in refusing to direct a verdict nor in refusing to set it aside on these grounds.

Appellant assigns as error that the damages were excessive.

The most the evidence showed or tended to show was a loss of crops for four years. Witnesses familiar with the character of the land and what it would produce on an average before the embankment was built, testified a fair cash rental value would be on an average two dollars and a half or three dollars per acre annually; appellee stated that about half the time he raised a full crop of sixty-five acres of the ninety acres in cultivation.

There is no way of computing with accuracy the true measure of loss where lands are overflowed so as to deprive the owner of their use. The lands might produce much or little or nothing, depending upon a variety of circumstances. In such case the rule has been adopted that the measure of damages should be the fair cash rental value, any other rule being speculative and uncertain. City of Chicago v. Huenerbein, 85 Ill. 594. The evidence tended to show appellee was deprived of the use of ninety acres for four years by reason of the improper structure which at a rental value of two dollars and a half per acre would be considerably more than the amount of the verdict.

Finding no error in the record, the judgment will be affirmed.

*Affirmed.*